IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LANITA CRISWELL, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; AND LASHEENA NEAL, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>*Plaintiffs,*<br><br>vs.<br><br>FROST BANK,<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   SA-24-CV-00327-XR |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Frost Bank's Opposed Motion to Compel Individual Arbitration, Strike Class Allegations, and Dismiss Complaint [#4]. The motion was referred to the undersigned for disposition. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiffs filed a response to the motion [#12], to which Defendant filed a reply [#13]. The undersigned held a hearing on the motion on August 9, 2024, at which counsel for Plaintiffs and Defendant appeared via videoconference. After considering the parties' written filings and the argument of counsel at the hearing, the undersigned will recommend that Defendant's motion be granted in part and denied in part for the reasons that follow.

1

## I.  Background

Plaintiffs LaNita Criswell and LaSheena Neal filed this case as a putative class action against Frost Bank, challenging Frost Bank's policy of allegedly charging customers overdraft fees on transactions that allegedly did not overdraw an account.  The types of transactions at issue in this case are referred to as APPSN, which stands for "authorize positive, purportedly settle negative."  According to Plaintiffs' Complaint, in these transactions, Frost Bank authorizes a debit transaction because at the time of the transaction there are sufficient funds to cover the transaction.  Then Frost Bank sequesters funds (by placing the specific funds needed to cover the transaction on a debit hold) for several days until the transaction is settled to ensure payment.  However, due to subsequent or intervening charges during this settlement period (that Frost Bank authorizes), the account balance becomes negative.  Plaintiffs allege that Frost Bank settles the initial transaction when the balance in an account is negative and improperly charges an overdraft fee on the initial transaction, for which there were adequate funds.  According to Plaintiffs, this practice leads to unexpected overdraft fees, which have a significant economic impact on account holders, especially those in lower socioeconomic classes.

Plaintiffs bring this case against Frost Bank on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs' Complaint defines the proposed class as the following: "All Frost Bank checking account holders, who, during the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance."  The class action Complaint asserts claims of breach of contract based on the account agreements between account holders and Frost Bank and violations of the Electronic Funds Transfer Act, 12 C.F.R. § 1005, for failure of Frost Bank to provide complete and accurate disclosures describing the applicable overdraft fees.  Plaintiffs

allege subject matter jurisdiction based on the Class Action Fairness Act, pleading in their Complaint that the proposed class is comprised of at least 100 members, at least one of which is a resident of a State other than Texas, and that the aggregate claims exceed $5 million. *See* 28 U.S.C. § 1332(d).

## **II. Analysis**

Frost Bank has filed a motion to compel arbitration and to dismiss. By its motion, Frost Bank argues that the two lead Plaintiffs must be compelled to individual arbitration based on a binding arbitration clause in the Deposit Agreement requiring arbitration of all claims arising out of the subject bank accounts and waiving the right to adjudicate claims on a class-wide basis. Frost Bank further argues that the class claims are barred by *res judicata* because the claims of the putative class members have already been adjudicated in another class action in which the class claims were nonsuited with prejudice after the individual plaintiffs were compelled to arbitrate on an individual basis. *See Woods v. Frost Bank*, No. 2021-CI-26208 (Bexar County, Tex.). Finally, Frost Bank argues Criswell's claims are time-barred under the governing two-year statute of limitations set forth in the Deposit Agreement.

The issues before the Court have been significantly narrowed since Frost Bank filed its motion. In their response to the motion to compel, Plaintiffs stated that they are unopposed to the request to compel individual arbitration. Plaintiffs confirmed this position at the Court's hearing. They agree with Frost Bank that the Deposit Agreement contains a binding agreement to arbitrate their claims individually and that by signing the agreements they waived the right to litigate their claims on a class-wide basis. The District Court should therefore grant Frost Bank's motion in part and compel Plaintiffs to individual arbitration.

As to the limitations argument, Plaintiffs contend that the argument that Criswell's claims are time-barred is for the arbitrator, not this Court, to decide. In its reply, Frost Bank agreed with Plaintiffs that this Court need not decide the limitations issue. The parties confirmed their agreement that the arbitrator will decide this issue at the Court's hearing. Accordingly, the District Court should deny without prejudice Frost Bank's motion to dismiss as to its argument that Criswell's claims are untimely.

There are three issues, however, remaining in dispute. First, the parties disagree as to whether the putative class claims of those account holders similarly situated to Plaintiffs are barred by *res judicata*. Second, Plaintiffs argue that prior to compelling them to arbitrate, this Court should strike a portion of the arbitration agreement containing pre-arbitration negotiation and mediation requirements as unconscionable. Third, the parties disagree as to whether the proper procedure after compelling Plaintiffs to arbitration is to dismiss or stay this case.

**A.    Any argument regarding the unconscionability of pre-arbitration procedures is moot.**

The undersigned will address the second disputed issue first. Plaintiffs argue in their response to Frost Bank's motion that prior to compelling their claims to individual arbitration, the District Court should sever a provision of the arbitration agreement as unconscionable. Plaintiffs argue that the pre-arbitration negotiation and mediation requirements in the agreement impose significant costs on banking customers, which far exceed their possible recovery for actual damages.

The provision of the contract challenged by Plaintiffs dictates that the account holder and Frost Bank "shall first attempt to resolve any dispute arising out of [the] Account or this Agreement through negotiation." (Deposit Agreement [#11], at 2.) If an account holder declines to negotiate, the individual "will be deemed to have waived [the] right to negotiate or mediate

4

and [the] only remedy is binding arbitration." (*Id.*) If negotiation is unsuccessful, the agreement states that "then [the account holder] and Bank agree to submit the dispute to mediation." (*Id.* at 3.) "Either [the account holder] or the Bank may request mediation upon written notice to the other Party." (*Id.*) As with negotiation, a failure "to designate a mediator, or . . . to participate in the mediation," results in waiver of the right to mediate and "the only remedy is binding arbitration." (*Id.*)

Plaintiffs did not participate in or invoke the pre-arbitration negotiation and mediation procedures set forth in the arbitration agreement. Plaintiffs and Frost Bank now agree to proceed to individual arbitration without engaging in any additional steps set forth in the governing contract. Accordingly, any challenge to the pre-arbitration requirements as unconscionable due to the financial burden they impose on Plaintiffs as account holders is moot in light of Plaintiffs' decision to bypass these procedures and proceed with arbitration.

At the Court's hearing, Plaintiffs argued that, if the Court does not strike the pre-arbitration procedures prior to compelling arbitration, there is a risk that Frost Bank will attempt to invoke these requirements in the arbitration to the detriment of Plaintiffs. Frost Bank represented to the Court on the record that it does not intend to do so. Nor is it clear how Frost Bank would make an argument to the arbitrator regarding Plaintiffs' failure to participate in negotiation or mediation. A failure to participate in negotiation or mediation results in the waiver of those procedures, and the only recourse is arbitration. The binding arbitration agreement already requires the parties to arbitrate. By not participating in mediation or negotiation, Plaintiffs are in the same position as any account holder who has signed a Deposit Agreement; they are required to arbitrate their claims.

**B.     *Res judicata* is not at issue because no class has been or can be certified.**

Frost Bank asks the Court to find that the class claims at issue in this case are barred by *res judicata* based on a state court judgment nonsuiting a putative class action. "Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (internal quotation and citation omitted). "A federal court asked to give *res judicata* effect to a state court judgment must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation." *Prod. Supply Co. v. Fry Steel, Inc.*, 74 F.3d 76, 78 (5th Cir. 1996) (italics added) (internal quotation and citation omitted). The elements of proof required for *res judicata* in Texas are the same as in federal court and require proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *see also Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (listing same elements).

Frost Bank asks the Court to find that the Bexar County court's non-suit with prejudice of a putative class action raising identical claims to Plaintiffs' claims here was a final judgment on the merits for the purposes of *res judicata* and the putative class members are prohibited from relitigating their class claims. Frost Bank's motion also asks the Court to strike the class claims.

The Court should deny Frost Bank's motion as to striking the class claims for two reasons. First, the parties agree that the prior nonsuit in *Woods v. Frost Bank* did not involve a certified class action. The Supreme Court has held that "[n]either a proposed class action nor a rejected class action may bind nonparties." *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011).

This is because a "nonnamed class member" is not a party to a class action "*before the class is certified.*" *Id.* at 313 (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2002) (Scalia, J., dissenting)) (emphasis in original). Texas courts have embraced the same principle. *See, e.g.*, *Palais Royal, Inc. v. Partida*, 916 S.W.2d 650, 653 (Tex. App.—Corpus Christi-Edinburgh 1996, no writ) ("Until the trial court duly certifies a class, a suit brought as a class action is treated as if it were brought by the named plaintiffs suing on their own behalf" and a decision on the merits "is not binding on any party other than [the named plaintiffs]."). The cases cited by Frost Bank regarding the preclusive effect of prior decisions in class actions were all cases involving decisions after certification of a class. A pre-certification nonsuit is not a binding decision on the merits as to unnamed putative class members for purposes of *res judicata*, which could bind putative class members in this case.

Relatedly (and perhaps more importantly), *this* case has not yet been certified as a class action. Again, the parties agree that Plaintiffs' claims asserted in this suit are governed by binding arbitration agreements requiring them to litigate their claims on an individual basis and waiving their right to pursue their claims as a class action. Plaintiffs have not moved to have other named Plaintiffs substituted into this suit as new lead plaintiffs on behalf of the putative class. Plaintiffs' claims are going to be litigated individually before the arbitrator. There are no class claims at issue in the arbitration, and there are no class claims left in this suit once the named Plaintiffs have been compelled to arbitration.

"[A] putative class acquires an independent legal status once it is certified under Rule 23." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Because certification has not yet occurred, and there are no named plaintiffs remaining in this case to litigate class claims, all putative class claims are now moot. *Cf. Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975) (holding

that class action is not rendered moot when the named plaintiff's individual claim becomes moot after the class has been duly certified); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) (extending *Sosna* to denials of class certification to afford class members opportunity to continue litigating their claims following determination on appeal that denial of certification was erroneous).

Frost Bank complains that a ruling barring Plaintiffs' counsel from filing future class actions based on the same claims is needed to prevent counsel from abusing the judicial process by filing future class actions despite there being agreements to arbitrate governing the class claims. However, the conundrum Frost Bank finds itself in is of its own making. Frost Bank chose to prohibit the litigation of class claims in limiting its account holders to individual arbitration, rather than permitting resolution of claims on a class-wide basis. Frost Bank also chose to move to compel arbitration prior to certification of a class action in both this case and in *Woods*. Both of these decisions have limited the preclusive effect of any decision on the merits as to other account holders who wish to bring similar claims.

Frost Bank argues that even if the pre-certification nonsuit in *Woods* does not have prelusive effect on the claims of putative class members in this suit, their claims should be stricken based on principles of comity. *Smith v. Bayer Corp.*, 564 U.S. 299, 317 (2011) ("[O]ur legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs."). Yet here, Frost Bank is not asking the Court to apply legal principles or conclusions from the *Woods* decision to find that the class claims lack merit and should be stricken. Frost Bank is arguing that the fact that the claims of the named plaintiffs in *Woods*, like the claims of Plaintiffs here,

8

are individually subject to a binding arbitration agreement forecloses any possible claim by any account holder of Frost Bank. This argument simply goes too far.

In summary, Frost Bank has not demonstrated that *res judicata* bars the class claims of the putative unnamed class members or that Plaintiffs' claims on behalf of unnamed putative class members should be stricken on this basis or based on general principles of comity. No Rule 23 class certification motion has been filed or granted, and Plaintiffs concede they are legally prohibited from moving for class certification. Plaintiffs' claims on behalf of putative class members are now moot.

**C.    The District Court should stay, not dismiss, this case.**

Frost Bank argues the District Court should dismiss this case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or improper venue pursuant to Rule 12(b)(3) due to the binding arbitration agreements between the parties. The District Court should stay, not dismiss, this case during the pendency of the arbitration. The Supreme Court recently held, construing the Federal Arbitration Act, that where a party has requested a stay of the court proceeding pending arbitration, a district court does not have discretion to dismiss the suit, even where all the claims are subject to arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (interpreting mandatory "shall" language in 9 U.S.C. § 3). Although Plaintiffs have not expressly requested a stay of this case, they generally oppose all relief requested in Frost Bank's motion other than the compelling of their claims to arbitration. If the parties agree to the dismissal of this case rather than a stay, they can file an advisory to that effect with the District Court.

### III.  Conclusion and Recommendation

Having considered Defendant's motion, the response and reply, the arguments of counsel at the hearing, and the governing law, the undersigned recommends that concerns Frost Bank's Opposed Motion to Compel Individual Arbitration, Strike Class Allegations, and Dismiss Complaint [#4] be **GRANTED IN PART** such that Plaintiffs' claims should be compelled to individual arbitration.  In all other respects, the motion should be **DENIED**.  Furthermore, the District Court should stay the individual Plaintiffs' claims pending the resolution of the arbitration and order quarterly status updates to be filed with the Court.

### IV.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained

in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 16th day of August, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE